CIRCUIT COURT        WASHINGTON COUNTY        STATE OF MARYLAND

DANIEL SMOCK,

Plaintiff

Case No.:

v.

VOLVO GROUP NORTH AMERICA, LLC (D/B/A. VOLVO / MACK POWERTRAIN of NORTH AMERICA),
300 EAST LOMBARD STREET, SUITE 1400
BALTIMORE, MD 21202-3219

and

THE PRUDENTIAL INSURANCE COMPANY OF AMERICA,
525 ST. PAUL PLACE
BALTIMORE, MD 21202-2272

DEFENDANTS.



## COMPLAINT

Plaintiff, Daniel Smock, by and through his attorneys, Ira C. Cooke and Marianne E. Morris and THE LAW OFFICE OF I.C.COOKE, L.L.C., hereby submits this Complaint against Volvo Group North America, LLC and Prudential Insurance Company of America d/b/a Prudential Group Life Insurance, for reasons states to the Court as follows:

### I.  PARTIES

1. Plaintiff, Daniel Smock is an adult resident of Washington County, Maryland residing at 16816 Bakersville Road, Boonsboro, MD 21713.

2. Defendant, Volvo Group North America, LLC and its subsidiaries, Volvo / Mack Power Train North America, Defendants Volvo Powertrain North America, (formerly Mack Trucks Inc.), a division of Volvo Trucks North America, an

1

unincorporated entity legally active and present in the state of Maryland, and a division owned by Volvo Group North America, a foreign corporation ("Volvo"), is a company doing business in the State of Maryland. (herein after "Volvo").
Volvo employs Plaintiff David Smock at its Volvo Power Train North American facility located at 13302 Pennsylvania Avenue, Hagerstown, Maryland 21742 Washington County, Maryland.

3. On information an belief, Defendant The Prudential Insurance Company of America, d/b/a Prudential Group Life Insurance Company, (Herein after "Prudential") a New Jersey Corporation, conducts significant business in the state of Maryland and is registered with the Maryland Department of Assessments and Taxation. On information and belief, Prudential is under contract with Defendant Volvo employee to provide life insurance to some of Volvo's employees.

## II. JURISDICTION AND VENUE

4. This Court has jurisdiction and venue pursuant to MD Code, Courts and Judicial Proceedings §§4-401 and 6-201 in that the Plaintiff resides in, the Defendant carry on a regular business within, and the cause of action accrued within Washington County, Maryland.

## III. FACTS

5. On or around September 20, 2011, Plaintiff Daniel Smock was hired by Defendant Volvo Group North America at the Volvo / Mack Power Train location in Hagerstown, Maryland. (hereinafter "Volvo")

6. *As an employee of Volvo, Mr. Smock was entitled to sign up for certain employee* benefits, including life insurance policies for himself and his family members.

7. On or around September 29, 2011, Plaintiff Daniel Smock, along with a local Volvo Human Resources Consultant assisting with completing all the required paperwork, made his elections for benefits coverage as an employee of Volvo. The Volvo Consultant in Hagerstown, Maryland then forwarded all of Mr. Smock's coverage elections to HR

2

GBO (Greensboro, NC), HR Center, who was then responsible for enrolling Daniel Smock by entering the elections into Volvo's computer system. Upon entering Mr. Smock's elections, GBO then forwarded a copy of the enrollments elections that were entered in Volvo's system for review by Volvo Hagerstown and Mr. Smock. Included in these elections were his elections for life insurance coverage for himself and for his family members.

8. Plaintiff Daniel Smock on or around September 29, 2011, received an email conformation that all elected coverage was now entered into the Volvo system. A printout copy of all elections was attached to said email. Mr. Smock was asked to make sure all information was correct for the amount of One hundred and fifty thousand dollars ($150,000.00). Please see attached Exhibit A, "Benefits Confirmation"..

9. That printout reflects Mr. Smocks life insurance benefit for his wife $150,000.00.

10. On or about October 5, 2011, Daniel Smock received a second email confirmation from Volvo's Greensboro HR team for his newly updated benefit elections from Volvo had been all accepted and now also included son Matthew on the plan as well. Please see attached Exhibit B "Benefits Confirmation". That printout also reflects Mr. Smocks life insurance benefit for his wife $150,000.00.

11. The attached two "Benefit Confirmation" forms sent from Defendant Volvo to Plaintiff Daniel Smock clearly indicates at page three, subheading "Spouses Life" that Mr. Smock has coverage of "Spouse Life 150K". (See Exhibits A & B)

12. As per the "Benefit Confirmation" form instructions to the employee (at page 1, paragraph 1) upon receipt, Mr. Smock reviewed the documents, *along with Volvo's Hagerstown HR consultant*, and they together confirmed, among other things, that his spousal life insurance coverage was $150,000 as he had requested. Because the benefits were listed correctly, he rightfully relied on said document, confirming his coverage

election. Mr. Smock reasonably assumed his benefit elections were correct and he need not take any further action.

13. The payroll deduction listed for the "Spousal 150K" coverage at the time was listed \as "$4.40". This amount was totaled in the form of one deduction from Mr. Smock's paycheck, , he assumed and relied on Volvo's affirmative assertion that he had this coverage, as listed in the "Benefits Confirmation" form and supporting email letter from both HR departments asserting all benefits were confirmed and deductions were taken as required.

14. Daniel Smock's wife, Tina Smock, became very ill in February of 2013. Said illness required numerous treatments from Mr. Smock's elected Medical Benefit Plan.

15. Around June of 2013, Mr. and Mrs. Smock learned that Tina Smock was, in fact, terminally ill. Upon learning this, Daniel Smock contacted HR GBO, to determine the procedures for getting an early cash out against her life insurance plan, to allow the family to move Tina back to her home in Michigan so she could be with her family and spend what quality time she had left with them.

16. Mr. Smock therefore telephoned Volvo HR in GBO. Upon making contact with them and requesting assistance regarding his wife's policy, Mr. Smock was met with confusion form Volvo H.R. No one seemed to understand the gravity of the situation. The HR department in GBO nonetheless did helped Daniel Smock find the record of his enrollment benefits in Volvo's online system.

17. ***The HR department in GBO clearly indicated Tina Smock had the $150K life insurance.*** Volvo HR therefore directed Daniel Smock to call Volvo's partner and defendant Prudential Group Life to determine the process for an early buy-out of the plan. They provided Daniel Smock the 1- 800 number to call to reach Prudential. This was the first time Daniel learned that Prudential was in anyway involved with the policy of insurance he purchased through Volvo.

18. Upon calling defendant Prudential, Daniel Smock discovered that Prudential knew nothing about Daniel Smock, his wife or the policy. Mr. Smock was understandably shocked to learn that:

> (1) Either Volvo had never relayed his benefit election information to Prudential, as was their duty, having assured Mr. Smock he carried said coverage for his wife or;
> (2) Prudential had never processed said request.

19. Daniel Smock immediately then called GBO HR (Volvo's call center) and explained that Prudential knew nothing about he and his wife, or their policy. wife.

20. Volvo HR's inexplicable response at this point was to admonish Mr. Smock for calling Prudential directly, stating that Volvo HR would need to make this contact on his behalf. Daniel Smock conveyed that it was in fact Volvo who directed him to call Prudential (giving him the number) in the first place.

21. Volvo HR apologized for the misunderstanding and then looked up Mr. Smock's policy on line. *At this point, Volvo again confirmed that Tina Smock was covered for $150K in life insurance.* They then moved forward and "opened a ticket" to review the coverage.

22. The next day HR GBO sent an email to Mr. Smock explaining that he did, in fact, enroll and requested the $150,000 coverage for his wife Tina Smock, but for some unknown reason the application had not been completed and accepted by Prudential.

23. This was the first time Daniel Smock had been informed in any way, that there was might be additional paper-work for enrollment in the plan.

24. Daniel Smock replied and complained to HR that the mistake was clearly on Volvo's side. Prudential and Volvo HR then, bizarrely, advised Mr. Smock in writing that this could all be easily fixed in up and coming "open enrollment" and that Mr. Smock could the policy for Tina at that time.

25. Daniel Smock indicated that she already had the coverage, as indicated in the Benefits Confirmation Forms. Volvo HR responded that they would look into this and they were "sorry for this foul-up"....

26. Tina Smock died on July 23, 2013.

27. On August 8, 2013, Daniel Smock submitted a "Group Life Insurance Beneficiary Claim Form" to recover the proceeds of his wife's life insurance policy with the Defendant's\Volvo and Prudential. This claim was duly submitted pursuant to Volvo's Benefit Plan / Policy and Procedure Handbook.

28. Plaintiff was informed at this point that he only had $25,000 in life insurance coverage on his wife, contrary to what he had elected on his benefits enrollment sheet and contrary to what the "Benefits Confirmation" form reflected. Mr. Smock then wrote a formal complaint to Volvo's HR Management in which he pointed out the mistakes that were made by HR.

29. Defendant Volvo has now taken the position that Mr. Smock never purchased the "Spousal 150K" coverage. The entire basis of Volvo's attempt to deny coverage is the single notation on "Benefits Confirmation" sheet, (*placed underneath confirmation of Mr. Smock's "Spouse Life 150K"*) that states "total coverage $25,000.00". (See Exhibits A & B)

30. Defendant Volvo has also stated on information and belief, that Defendant Prudential should have contacted Mr. Smock had he purchased the coverage of "Spousal 150K".

31. Volvo and Prudential are refusing to honor Mr. Smock's fully documented election and purchase of $150,000.00 in life insurance coverage for his wife, after the death of his wife Tina Smock on July 23, 2013 wife's death[1].

---

[1] In what can only be described as an astonishing lack of basic civility, Volvo, in response to Mr. Smock's inquiries regarding the defendants' complete failure in the administration and management of his wife's life insurance policy, reminded Mr. Smock that "*You will have the opportunity to apply again during our next open enrollment period in October...*" (See Exhibit C, last full paragraph).

## IV. CAUSE OF ACTION

32. Plaintiff realleges and incorporates by reference the allegations of paragraphs one through thirty one (31) above.

### A. Negligence

33. Defendants Volvo and/or Prudential negligently failed in the administration and management of the Plaintiff's enrollment benefits package and failed to carry out their respective duties to ensure that Plaintiff received the life insurance policy he clearly selected and believed was being deducted for as purchased.

34. On information and belief, Defendant Volvo failed to ensure that Mr. Smock's benefit elections were properly conveyed to Defendant Prudential, as was its duty as plan administrator.

35. In addition and/or in the alternative, Defendant Prudential negligently failed to properly administer, issue and honor the life insurance policy Mr. Smock enrolled for purchased for his wife, Tina Smock.

36. Defendants' negligence resulted in Mr. Smock erroneously receiving $25,000 in life insurance when he had clearly and elected and purchased $150,000 in life insurance for his wife Tina.

37. Mr. Smock suffered and continues to suffer serious pecuniary harm as a result of the Defendants' gross negligence.

### B. Negligent Misrepresentation

38. Plaintiff realleges and incorporates by reference the allegations of paragraphs one through thirty-seven (37) above.

39. Defendant Volvo affirmatively provided Mr. Smock with the "Benefits Confirmation" form which accurately reflected that his elections and purchasing $150,000 in spousal life insurance. (See Exhibits A & B).

40. As Mr. Smock's Employer and Benefit Plan Administrator, Volvo had the fiduciary duty to ensure Mr. Smock received the coverage he elected and was being deducted from his paycheck.

41. Once Volvo *confirmed in writing* that Mr. Smock's coverage was exactly as he had elected, Volvo foreclosed Mr. Smock's ability to discover the error of Defendants Volvo and/or Prudential. (See Exhibits A& B).

42. Mr. Smock reasonably relied on Volvo's representation of the cost of the spousal life insurance coverage stated in the "Benefits Confirmation" form, even if the cost reflected was erroneous.

43. Mr. Smock suffered and continues to suffer serious pecuniary harm as a result of the Defendants' gross negligence.

## IV.   JURY DEMAND

44. Plaintiff, pursuant to MD Rule 2-325(a), hereby demands a trial by jury.

**WHEREFORE**, Plaintiff requests:

    A.    Damages in an amount of $125,000.00;
    B.    Costs, pre and post judgment interest and all allowable expenses of litigation;
    D.    Such other and further relief as the nature of his cause may require.

**I SOLEMNLY** declare and affirm, under the penalties of perjury, that the contents of the foregoing are true and correct to the best of my knowledge, information and belief.

Dated this 25th day of November, 2013

_____
DANIEL SMOCK

Respectfully submitted this 25th day of November, 2013

_____
**Ira C. Cooke**
**Marianne E. Morris**
**Law Offices of I.C. Cooke**
Attorneys for Plaintiff Daniel Smock
138 West Washington Street
Suite 200
Hagerstown, MD 21740
(240) 347-4944